THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN NOW
152 W. Johnson Street
#214
Madison, Wisconsin 53703,

      Case No. 17-CV-820

    Plaintiff,

v.

JESSE KREMER, in his Official Capacity,
JOHN NYGREN, in his Official Capacity,
ROBIN VOS, in his Official Capacity,
2 E. Main Street
Madison, Wisconsin 53702

    Defendants.

---

## COMPLAINT

---

Plaintiff, One Wisconsin Now, by its attorneys, Pines Bach LLP, alleges as follows:

### INTRODUCTION

1. This action is a claim for equitable relief, including declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983, to end restrictions on speech prohibited by the First Amendment to the United States Constitution.  Defendant elected officials maintain Twitter accounts to distribute and receive information from constituents, citizens, and others.  These Twitter accounts are a public forum for the digital age, open to anyone with a Twitter account—except for those who have been blocked.  Plaintiff regularly uses its own Twitter account to engage in protected speech and to engage with the accounts of others, including Defendants' accounts.  Plaintiff has used Twitter to criticize policies promoted by the Defendants, such as those affecting students, minorities, and women.  Defendants have

"blocked" Plaintiff from their official Twitter accounts, depriving Plaintiff of the ability to participate in the forums Defendants have created and exercise its rights to free speech and to petition the government. Defendants' actions to block Plaintiff, under color of law, are unconstitutional and Plaintiff is entitled to declaratory and injunctive relief.

## JURISDICTION & VENUE

2. This Court has original jurisdiction over this claim pursuant to 28 U.S.C. § 1331, which provides for original district court jurisdiction over cases presenting federal questions, and the cause of action arises under the United States Constitution and 42 U.S.C. § 1983.

3. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b), because all defendants reside in Wisconsin and a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Wisconsin.

## PARTIES

4. Plaintiff One Wisconsin Now, Inc. is a 501(c)(4) non-profit corporation based in Madison, Wisconsin that engages in issue advocacy and works to promote a vision of a Wisconsin with equal economic opportunity for all. Its staff operates a verified Twitter account under the handle @onewisconsinnow.

5. Defendant Jesse Kremer is Representative to the Wisconsin State Assembly from the 59th Assembly District, and is sued in his official capacity. He resides in Kewaskum, Wisconsin and his office is located in Madison, Wisconsin. Kremer operates and/or oversees the operation of a verified Twitter account under the handle @RepJesseKremer.

6.      Defendant John Nygren is Representative to the Wisconsin State Assembly from the 89th Assembly District, and is sued in his official capacity. He resides in Marinette, Wisconsin and his office is located in Madison, Wisconsin. Nygren operates and/or oversees the operation of a verified Twitter account under the handle @rep89.

7.      Defendant Robin Vos is Representative to the Wisconsin State Assembly from the 63rd Assembly District, and is sued in his official capacity. He resides in Burlington, Wisconsin and his office is located in Madison, Wisconsin. Vos operates and/or oversees the operation of a verified Twitter account under the handle @repvos.

**FACTS**

*Twitter*

8.      Twitter is an online social media platform with over 300 million active users worldwide, including nearly 70 million in the United States. The platform allows users to publish short messages, to republish or respond to others' messages, and to interact with other Twitter users in relation to those messages. Social media sites like Twitter are "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 582 U.S. __ (2017).

9.      A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets," up to 140 characters in length, to a webpage on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links.

10.     A Twitter user's webpage displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user generates a tweet, the timeline updates immediately to include

that tweet. Anyone who can view a user's public Twitter webpage can see the user's timeline. Below is a screenshot of part of the timeline associated with the @repvos account:



11. A Twitter user must have an account name, which is an @ symbol followed by a unique identifier (e.g., @repvos), and a descriptive name (e.g., Robin Vos). The

4

account name is called the user's "handle." Alongside the handle, a user's webpage will display the date the user joined Twitter and a button that invites others to "Tweet to" the user. (This button is visible only to other Twitter users.)

12. A user's Twitter page may also include a short biographical description; a profile picture, such as a headshot; a "header" image, which appears as a banner at the top of the webpage; the user's location; a button labeled "Message," which allows two users to correspond privately; and a small sample of photographs and videos posted to the user's timeline, which link to a full gallery.

13. For example, part of the webpage for @RepJesseKremer recently looked like this:



14. An individual "tweet" comprises the tweeted content (i.e., the message, including any embedded photograph, video, or link), the user's account name (with a link to the user's Twitter webpage), the user's profile picture, the date and time the tweet was

5

generated, and the number of times the tweet has been replied to (♡), retweeted by (⟲), or "favorited" by (♡) other users. Thus, a recent tweet from @rep89 looks like this:



15.     As on online platform, Twitter webpages and their associated timelines are visible to everyone with internet access, including those who are not Twitter users. However, although non-users can view users' Twitter webpages, they cannot interact with users on the Twitter platform and may not see tweets in real time.

16.     Twitter users can subscribe to other users' messages by "following" those users' accounts. Users see all tweets posted or retweeted by accounts they have followed in real time in their own Twitter home page or "feed."

17.     Beyond publishing tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet"—i.e., republish—the tweets of other users, either by publishing them directly to their own followers or by "quoting" them in their own tweets. This is a recent retweet by @RepJesseKremer:

6



18.     A Twitter user can also reply to other users' tweets. Like any other tweet, a reply can be up to 140 characters in length and can include photographs, videos, and links. When a user replies to a tweet, the reply appears on the user's timeline under a tab labeled "Tweets & replies." The reply will also appear on the original user's feed in a "comment thread" under the tweet that prompted the reply. Other users' replies to the same tweet will appear in the same comment thread, nested below the replies to which they respond.

19.     Comment threads often reflect multiple overlapping conversations among and across groups of users, sometimes among hundreds or thousands of users. Below is a recent @RepJesseKremer tweet that prompted over a hundred comments:



Reply tweets by users with a large number of followers, and tweets that are "favorited" and retweeted by large numbers of users, generally appear higher in the comment threads.

20.   A Twitter user can "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a "notification" that he or she has been mentioned in another user's tweet.

21.   Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

22. A user can restrict another user's access to his or her account on Twitter by "blocking" that user. A blocked user cannot follow, see, or reply to the blocking user's tweets, retweet the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The blocking user will not be notified if the blocked user mentions her; nor will the blocking user see any tweets posted by the blocked user.

23. Blocked users do not receive a notice alerting them that they have been blocked. However, if they visit the profile that blocked them, they will see a message indicating that the other user has blocked him or her from following the account and viewing the tweets associated with the account. This is an example of a notification from Twitter that a user has been blocked, taken from One Wisconsin's Now's account:



*Defendants' Twitter Accounts*

24. The @RepJesseKremer Twitter account ("the Kremer Account") was created in January 2015. Since that time, Kremer has used the Account as an instrument for exchanging and discussing information with individuals and groups on a variety of topics related to the legislative agenda, local, state, and national developments, and other matters of public concern. The Kremer Account has over 900 followers.

25. Kremer presents the Kremer Account to the public as one that he operates in his official capacity rather than his personal one. The Twitter page associated with the Account is registered to "Rep. Jesse Kremer, Official account for Wisconsin State Representative Jesse Kremer (R-Kewaskum)." The header features an image of the Wisconsin State Capitol. The page links to Kremer's official legislative website, operated by the Wisconsin Legislative Technology Services Bureau.

26. Kremer also maintains a separate Twitter account, @JesseforWI, which in comparison to the @RepJesseKremer account is presented to the public as one that he operates in his personal capacity, with a focus on political campaign operations.

27. The @rep89 account ("the Nygren account") was created in May 2009, with the "89" presumably referring to the legislative district Nygren serves. Since that time, Nygren has used the Account as an instrument for exchanging and discussing information with individuals and groups on a variety of topics related to the legislative agenda, local, state, and national developments, and other matters of public concern. The Nygren Account has approximately 2,600 followers.

28. Nygren presents the Nygren Account to the public as one that he operates in his official capacity rather than his personal one. The Twitter page associated with the

account is registered to John Nygren, "State Representative Joint Finance Co-Chair, Proudly Serving Marinette, Oconto, and Brown Counties." The page links to Nygren's official legislative website, operated by the Wisconsin Legislative Technology Services Bureau.

29. The @repvos account ("the Vos Account") was created in March 2009. Since that time, Vos has used the Account as an instrument for exchanging and discussing information with individuals and groups on a variety of topics related to the legislative agenda, local, state, and national developments, and other matters of public concern. The Vos Account has over 4,000 followers.

30. Vos presents the Vos Account to the public as one that he operates in his official capacity rather than his personal one. The Twitter page associated with the account is registered to Robin Vos, "State Representative representing parts of Racine County."

31. None of the Defendants' Twitter accounts set any limits on who may use the forums, or the topics that may be discussed, other than Twitter's default terms of use.

32. Because of the way in which Defendants use their Twitter accounts, the accounts have become an important channel for news about the Assembly, state government, and public policy issues. For example, the Kremer Account included a May 3, 2017, tweet inviting people to testify in favor of his "Campus Free Speech" act at a legislative hearing:



Those who are blocked from the accounts are impeded in their ability to learn information that is shared only through that account.

33.    The comment threads associated with tweets from Defendants' Accounts and Twitter's "mentioning" feature are important forums for discussion and alerts about Defendants' performance as elected representatives and about government policy. Defendants' Accounts are a kind of digital town hall in which Defendants and/or their aides use the tweet function to communicate news and information to the public, and members of the public use the reply function to respond to Defendants and their aides and exchange views with one another.

12

*Defendants' Blocking of One Wisconsin Now from Defendants' Twitter Accounts*

34. One Wisconsin Now uses its Twitter account to, *inter alia*, engage in protected political speech, monitor Wisconsin's elected officials, and deliver news and analysis to the public, and intends to use the account for these purposes in the future. The One Wisconsin Now Twitter account has approximately 10,200 followers.

35. One Wisconsin Now began following the Kremer Account on or about April 2015. Before One Wisconsin Now was blocked, it monitored the Kremer Account's tweets, commented on the Account's tweets, and mentioned @repjessekremer in its own tweets.

36. One Wisconsin Now has been critical of Kremer's stances on women's health issues, race relations, transgender rights, and most recently, a so-called "Campus Free Speech" act co-sponsored by Kremer that would punish students who disrupt another's speech. The bill was introduced on May 5, 2017, and One Wisconsin Now criticized the bill in the Assembly committee hearing on May 11, 2017, on Twitter, and via other media.

37. On or before June 8, 2017, Kremer blocked or caused One Wisconsin Now to be blocked from the Kremer Account, preventing it from receiving notification of Kremer's tweets in real time or at all, retweeting Kremer's tweets, or replying to Kremer's tweets and participating in a comment thread.

38. Additionally, because One Wisconsin Now was blocked, Kremer was not notified when he was mentioned in a One Wisconsin Now Tweet. For example, he was not notified of an August 21, 2017, One Wisconsin Now tweet stating "Reminder @repjessekremer anti-free speech bill bars UW from taking scientific position we've more than 6,000 years of #eclipses," and another One Wisconsin Now tweet on September 7,

2017, promoting an upcoming forum where the Campus Free Speech act would be discussed.

39. One Wisconsin Now began following the Nygren Account on or about September 2013. Before One Wisconsin Now was blocked, it monitored the Nygren Account's tweets, replied to the account's tweets, and mentioned @rep89 in its own tweets.

40. One Wisconsin Now has been critical of Nygren's stances on school vouchers, the state budget, alcohol and drug treatment for minors, and most recently, student loan debt refinancing. One Wisconsin Now criticized Nygren in a May 26, 2017, press release, shortly after Nygren and other members of a committee that Nygren co-chairs voted against a student loan refinancing measure.

41. On or before August 9, 2017, Nygren blocked or caused One Wisconsin Now to be blocked from the Nygren Account, preventing it from receiving notification of Nygren's tweets in real time or at all, retweeting Nygren's tweets, or replying to Nygren's tweets and participating in a comment thread.

42. Additionally, because One Wisconsin Now was blocked, Nygren was not notified when he was mentioned in a One Wisconsin Now Tweet. This included a tweet on or August 10, 2017, when One Wisconsin Now mentioned the Nygren Account, stating "Trump recommends exactly the opposite of what @govwalker @rep89 & @BradSchimel want. #wimedia," and including a link to a CBS News clip of a statement by President Trump on opioid policy.

43. One Wisconsin Now began following the Vos Account on or about January 2011. Before One Wisconsin Now was blocked, it monitored the Vos Account's tweets,

commented on the Account's tweets, retweeted the tweets, and mentioned @repvos in its own tweets.

44. One Wisconsin Now has been critical of Vos's stances on student loan debt refinancing, private school vouchers, and the same "Campus Free Speech" bill co-sponsored by Kremer, among other issues.

45. Sometime before March 16, 2017, Vos blocked or caused One Wisconsin Now to be blocked from the Vos Account, preventing or impeding it from receiving notification of Kremer's tweets in real time or at all, retweeting Kremer's tweets, or replying to Kremer's tweets and participating in comment threads. This is an example of One Wisconsin Now's attempt to re-tweet an update from the @repvos account, which was displayed as "unavailable" because One Wisconsin Now was blocked.



46. Additionally, because One Wisconsin Now was blocked, Vos was not notified when he was mentioned in a One Wisconsin Now tweet. For example, he was not notified of a May 11, 2017 tweet stating, "Just a coincidence "Boss" @repvos bill attacking student

15

free speech up for committee hearing during finals week at UW Madison?" and another One Wisconsin Now tweet on September 7, 2017, promoting an upcoming forum where the "campus free speech" bill sponsored by Kremer and Vos would be discussed.

47. While One Wisconsin Now has often been critical of Defendants via Defendants' and its own Twitter accounts, it has not posted anything threatening, obscene, or defamatory.

48. Defendants' Accounts are designated public forums.

49. One Wisconsin Now would continue to use the forums created by Defendants' Twitter accounts, had it not been blocked from doing so.

50. Defendants blocked One Wisconsin Now from their Twitter accounts based on the content of One Wisconsin Now's speech.

51. Defendants' Twitter activity and actions to block One Wisconsin Now were taken under color of state law, acting as state representatives.

52. Defendants' acts, policy, or practice of blocking of One Wisconsin Now from Defendants' accounts infringes One Wisconsin Now's First Amendment rights. It imposes an unconstitutional restriction on One Wisconsin Now's speech in a designated public forum and impedes One Wisconsin Now's ability to communicate with its Twitter followers and others. It imposes an unconstitutional restriction on One Wisconsin Now's right to access statements that Defendants are otherwise making available to the public at large. It also imposes an unconstitutional restriction on One Wisconsin Now's right to petition the government for redress of grievances and a prior restraint on One Wisconsin Now's speech. These restrictions are not narrowly tailored to serve any permissible governmental interest.

53. These infringements on One Wisconsin Now's rights constitute an irreparable and ongoing harm that One Wisconsin Now is suffering, and will continue to suffer, for which One Wisconsin Now has no adequate remedy at law.

**CLAIM I FOR VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION**

54. One Wisconsin Now repeats the allegations in paragraphs 1 through 53 above as if fully alleged herein.

55. Defendants' acts, policy, or practice of blocking of One Wisconsin Now from their Twitter accounts violates the First Amendment because Defendants imposed an unconstitutional content-based restriction on One Wisconsin Now's participation in a public forum that does not serve a compelling government purpose and lacks narrow tailoring, or alternatively, because it is a content-neutral restriction that does not serve a significant governmental interest, lacks narrow tailoring, and fails to leave open ample alternatives for communication.

56. Defendants' acts, policy, or practice of blocking One Wisconsin Now from their Twitter accounts violates the First Amendment because it imposed an unconstitutional content-based restriction on One Wisconsin Now's access to official statements that the Defendants otherwise make available to the general public that does not serve a compelling government purpose and lacks narrow tailoring, or alternatively, because it is a content-neutral restriction that does not serve a significant governmental interest, lacks narrow tailoring, and fails to leave open ample alternatives for communication.

57. Defendants' acts, policy, or practice of blocking of One Wisconsin Now from their Twitter accounts violates the First Amendment because it imposed an unconstitutional content-based restriction on One Wisconsin Now's ability to petition the government for

redress of grievances that does not serve a compelling government purpose and lacks narrow tailoring, or alternatively, because it is a content-neutral restriction that does not serve a significant governmental interest, lacks narrow tailoring, and fails to leave open ample alternatives for communication.

58. Defendants' acts, policy, or practice of blocking of One Wisconsin Now from their Twitter accounts violates the First Amendment because it is an unlawful prior restraint on speech.

## PRAYER FOR RELIEF

WHEREFORE, One Wisconsin Now requests that this Court:

1. Declare Defendants' acts, policy, or practice of blocking of One Wisconsin Now from Defendants' Accounts to be unconstitutional under the First and Fourteenth Amendments;

2. Enter a permanent injunction requiring Defendants to unblock One Wisconsin Now from Defendants' Accounts, and prohibiting Defendants from blocking One Wisconsin Now or others from the Accounts;

3. Award One Wisconsin Now its costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

4. Grant any additional relief as may be just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 28, Plaintiff demands a jury on all issues so triable.

Respectfully submitted this 31st day of October, 2017.

PINES BACH LLP

/s/ Christa O. Westerberg
Lester A. Pines, SBN 1016543
Christa O. Westerberg, SBN 1040530
Aaron G. Dumas, SBN 1087951

*Attorneys for One Wisconsin Now, Plaintiff*

Mailing Address:
122 West Washington Ave
Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
lpines@pinesbach.com
cwesterberg@pinesbach.com
adumas@pinesbach.com